856 F.2d 1185
 Robert "Say" McINTOSH, Appellant,
v.
ARKANSAS REPUBLICAN PARTY-FRANK WHITE ELECTION COMMITTEE;
Arkansas State Police; Tommy Goodwin, Individually and as
Director of the Arkansas State Police; North Little Rock
City Police Dept.; Bill Younts, Individually & as Chief of
North Little Rock Police Dept.; John Doe, & Richard Roe,
etc., Appellees.
 No. 87-2629EA.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 17, 1988.
Decided Sept. 16, 1988.
 
 1
 Raymond Easterwood, Little Rock, Ark., for appellant.
 
 
 2
 Joseph V. Svoboda, Asst. Atty. Gen., Little Rock, Ark., for appellees.
 
 
 3
 Before ARNOLD, Circuit Judge, ROSS, Senior Circuit Judge, and WOLLE*, District Judge.
 
 
 4
 WOLLE, District Judge.
 
 
 5
 Robert "Say" McIntosh appeals for a third time the dismissal of his federal and state-law claims for damages arising from his arrest at a fund-raising banquet held February 26, 1982. In McIntosh v. Arkansas Republican Party--Frank White Election Committee, 766 F.2d 337 (8th Cir.1985), this court affirmed the dismissal of McIntosh's federal claims alleging racial discrimination and denial of free speech, but we remanded for trial his federal claim under 42 United States Code section 1983 alleging false arrest and his pendent state false arrest and false imprisonment claims. Following remand the District Court[1] received additional evidence and then dismissed the remaining claims on the ground that the defendant law enforcement officers had probable cause to arrest him. When McIntosh appealed that second dismissal, this court, en banc, directed the District Court on remand to reconsider its decision in light of Anderson v. Creighton, 483 U.S. ----, 107 S.Ct. 3034, 97 L. Ed. 2d 523 (1987), decided after the District Court had entered its second dismissal ruling. On remand, the District Court again dismissed McIntosh's claims, 676 F.Supp. 912. In this third appeal we need address only McIntosh's contention that the defendants did not establish their defense of qualified immunity. We conclude that defense was established as a matter of law, and we therefore affirm.
 
 
 6
 The background facts are summarized in our first opinion. 766 F.2d at 339. We now focus on those facts that bear directly on the issue of qualified immunity of the two defendant law enforcement officers, Sergeants Reinold and Phillips of the Arkansas State Police. Evidence presented on that issue supports the following pertinent findings of the District Court.
 
 
 7
 McIntosh's unswerving purpose in attending the private fundraising banquet was to make a disruptive and unsolicited speech on some topic of his choice in front of Vice President Bush and Governor White. McIntosh's outlandish and comical dress was intended to attract and did attract immediate attention. When intercepted and then arrested by the officers, McIntosh was about twenty feet from two open doors leading into the private luncheon area within the banquet hall. He was noticeably agitated and raised his voice in the presence of ticket holders who were going in and out of the dining area just a few feet from him. Before arresting him the officers told him he could not attend the banquet, warned him he might be arrested, and asked him to leave. McIntosh refused to leave and replied, "Well, take me to jail."
 
 
 8
 The district court found the situation at the time "extremely tense and tight," with Secret Service personnel "swarming around the area." McIntosh "was well known for his bizarre actions for years prior to this incident." Before officers Reinold and Phillips had gone to the banquet, they had been briefed about McIntosh's announced intent to speak out at the banquet and disrupt it. The officers had also been briefed by a staff prosecuting lawyer concerning the wording of the Arkansas disorderly conduct statute. At the time that statute defined "disorderly conduct" in pertinent part as follows:
 
 
 9
 A person commits the offense of disorderly conduct, if, with the purpose of causing public inconvenience, annoyance or alarm or recklessly creating a risk thereof, he: ... disrupts or disturbs any lawful assembly or meeting of persons....
 
 
 10
 Ark.Stat.Anno. Sec. 41-2908 (Repl.1977). The officers arrested McIntosh for disorderly conduct under that statute, but the charge was later dismissed.
 
 
 11
 The District Court concluded that the two law enforcement officers had probable cause to believe that an offense of disorderly conduct was being committed, with exigent circumstances present. The Court also upheld the defense of qualified immunity, concluding that "any reasonable officer could have believed the arrest of [McIntosh] to be lawful, in light of clearly established law and information arresting officers possessed." We need not and do not decide the question of probable cause that is entwined with but distinct from the question of qualified immunity. See Garionis v. Newton, 827 F.2d 306, 309 n. 5 (8th Cir.1987). We affirm the District Court's dismissal of McIntosh's claims solely by reason of the defense of qualified immunity.
 
 
 12
 Qualified immunity is a question of law. Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411, 427-28 (1985). In a decade of decisions refining and fashioning this common-law defense, the United States Supreme Court has attempted to strike a balance between the individual's civil-liberties guarantees arising from the Constitution and the equally important need to protect reasonable official law enforcement actions. See, e.g., Harlow v. Fitzgerald, 457 U.S. 800, 813-19, 102 S.Ct. 2727, 2735-39, 73 L.Ed.2d 396, 407-11 (1982); Butz v. Economou, 438 U.S. 478, 508-12, 98 S.Ct. 2894, 2911-14, 57 L. Ed. 2d 895, 917-20 (1978).
 
 
 13
 Principles governing qualified immunity in this case are delineated in Anderson v. Creighton, 483 U.S. ----, 107 S.Ct. 3034, 97 L. Ed. 2d 523 (1987), also a section 1983 case involving alleged Fourth Amendment violations. The guidelines we apply in this case involving a warrantless arrest mirror the guidelines explicitly set forth in Anderson which involved a warrantless search. The critical question is "the objective (albeit fact-specific) question whether a reasonable [law enforcement] officer could have believed" the warrantless arrest of McIntosh was lawful "in light of clearly established law and the information the searching officers possessed." 483 U.S. at ----, 107 S.Ct. at 3040, 97 L. Ed. 2d at 532. Parsing this test, we note that we must take into account all information possessed at the time of the arrest by Reinold and Phillips. We need not decide whether the conduct was lawful and must also pass the question whether the officers believed their conduct was lawful. The precise question Anderson directs us to answer is whether reasonable officers possessing all the information Reinold and Phillips possessed could have believed there was probable cause to arrest McIntosh and remove him from the banquet hall. Id.; Malley v. Briggs, 475 U.S. 335, 344-45, 106 S.Ct. 1092, 1098-99, 89 L.Ed.2d 271, 280-81 (1986); Garionis, 827 F.2d at 308.
 
 
 14
 We called upon the District Court to reconsider the evidence in this case and answer that specific qualified-immunity question posed by Anderson. The District Court emphatically answered in the affirmative, concluding that "a reasonable officer could have believed that the arrest comported with the Fourth Amendment even if it actually did not." As noted above, the District Court's specific findings of fact are fully supported by evidence in the record.
 
 
 15
 McIntosh presents ingenious fact-specific challenges to the trial court's findings and conclusions. He argues, for example, that he had not yet committed acts which would lead reasonable officers to believe his conduct was unlawful; he argues he was not as close as twenty feet from the entrance to the banquet hall; he contends he did not become agitated or raise his voice; and he contends he had done nothing to disturb the peace when arrested. Credibility of witnesses is involved on these issues, however, and we give respectful deference to the trial court's findings of fact on issues like this tried to the court. See Washington v. Simpson, 806 F.2d 192, 195 (8th Cir.1986); Fed.R.Civ.P. 52(a).
 
 
 16
 We accept as correct the District Court's pertinent findings of fact: McIntosh intended to disrupt the banquet, refused to heed the officers' warning, and was attracting attention and creating a disturbance by his dress, his agitation, and his raised voice. The tense circumstances at the gathering of State and national figures warranted special precautions. We agree with the District Court that reasonably cautious law enforcement officers, in the position of Reinhold and Phillips and knowing what they knew, could have believed that McIntosh was committing or was about to commit an offense. See Michigan v. DeFillippo, 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343, 349-50 (1979) (suggesting probable cause to justify an arrest may include circumstances causing an officer to believe a suspect "has committed, is committing, or is about to commit an offense"); Garionis, 827 F.2d at 309.
 
 
 17
 Officers Reinold and Phillips established as a matter of law their defense of qualified immunity in this action against them for damages. The District Court correctly dismissed McIntosh's action on that ground.
 
 
 18
 AFFIRMED.
 
 
 
 *
 The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa, sitting by designation
 
 
 [1]
 The Honorable Andrew W. Bogue, Senior District Judge, sitting by designation in the United States District Court for the Eastern District of Arkansas